Christopher Lundberg OSB No. 941084
email: clundberg@hk-law.com
Matthew E. Malmsheimer, OSB No. 033847
Email: mmalmsheimer@hk-law.com
HAGLUND KELLEY LLP
2177 S.W. Broadway
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| **MATTHEW E. MALMSHEIMER**, and **ELIZABETH W. MALMSHEIMER**<br><br>Plaintiffs,<br>v.<br><br>**FCA, US, LLC**, a foreign limited liability company,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>Violation of the Unlawful Trade Practices Act, ORS 646.608 and Lemon Law Buyback Claim, ORS 646A.400, *et seq.*<br><br>DEMAND FOR JURY TRIAL |

## JURISDICTION

1. This Court has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Parties and the amount in controversy—including compensatory damages, punitive damages to be sought, and attorney fees—exceeds $75,000.

///

///

## VENUE

2.      Venue is proper in the District of Oregon, Portland Division, because Defendant conducts regular sustained business activity in Gresham Oregon and all the events giving rise to the claims occurred in Multnomah County in the State of Oregon. 28 U.S.C. § 1391(b).

## PARTIES

3.      Plaintiffs Matthew E. Malmsheimer and Elizabeth W. Malmsheimer are married individuals who reside in Milwaukie Oregon.

4.      Defendant FCA US, LLC ("FCA") is a Delaware limited liability company with its primary place of business in Auburn Hills, Michigan. At all times material, FCA acted by and through its agents and employees, who were acting in the course and scope of their agency or employment and in furtherance of FCA's interests. FCA manufactures, markets and sells a range of motor vehicles under various brands names, including Jeep.

## ORS 646A.408 INFORMAL DISPUTE SETTLEMENT PROCEDURE EXHAUSTION

5.      Plaintiffs completed the informal dispute settlement process in accordance with ORS 646A.408 prior to filing this action.

## FACTS

5.      On August 14, 2022, Plaintiffs purchased a new Jeep Wrangler 4xe Rubicon, VIN No. 1C4-JJXR61NW-229387 from Gresham Dodge Inc., an FCA dealership. The vehicle had a purchase price of $65,565 and Plaintiffs purchased it for personal and family purposes.

6.      Barely more than a week after the purchase, on August 22, 2022, the vehicle suffered a complete electric and drive system failure. As Mr. Malmsheimer was driving to work,

Page 2 – **COMPLAINT**

HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
TEL: (503) 225-0777/FAX: (503) 225-1257

the dashboard suddenly flashed an alarming sequence of signals, ultimately showing a large lightning bolt symbol, and the vehicle suddenly lost power, as if someone were applying the brakes, even though the brakes were not engaged.

7.   After Mr. Malmsheimer came to a complete stop at a red light, the vehicle would barely get into motion, taking nearly a minute to go from a full stop to 35 mph. This repeated several times at subsequent stops until finally the vehicle refused to move.

8.   Mr. Malmsheimer was ultimately able to get the vehicle to run by turning the power off and then back on. Later that day, Mr. Malmsheimer took the vehicle to the Gresham Dodge service department for diagnosis and repair. The vehicle's odometer read 221 miles when Mr. Malmsheimer left it with the service department.

9.   The Gresham Dodge service department was unable to determine the cause of the malfunction and could not get it to recur. To get the assistance of Jeep with the diagnosis, the service department suggested that Mr. Malmsheimer open a Jeep Cares case, which he did on August 29, 2022, Case No. 83954153. Jeep Cares is a system established by FCA for consumers to report vehicular malfunctions and issues.

10.   For more than a week, Mr. Malmsheimer waited. However, the Jeep Cares representative failed to contact the dealership's service department even after Mr. Malmsheimer asked him to do so on August 31, 2022. Given the nature of the problem, Mr. Malmsheimer did not want to risk a recurrence until Jeep's service engineers had determined what was wrong with the vehicle and corrected the issue. Finally, in frustration, Mr. Malmsheimer retrieved the

vehicle from the service department on August 31, 3022 – 9 days after he had brought it in for repair.

11.     Less than two weeks later, on September 11, 2022, the exact same malfunction and loss of power occurred not once, but twice. The first incident occurred when the vehicle lost power as Mr. Malmsheimer was pulling out of a parking lot onto a surface street. Thankfully there was no approaching traffic in the travel lane and Mr. Malmsheimer was able to get the vehicle to the road shoulder. The second incident occurred shortly thereafter as Mr. Malmsheimer was backing out of a parking stall. The vehicle's odometer read 461 and 462 miles at each respective incident.

12.     The next day, on September 12, 2022, Mr. Malmsheimer again took the vehicle to the dealership for service. The service department struggled to replicate the issue to diagnose the malfunction and was finally able to "replicate the fault." The dealership service department was unable to complete its repair efforts until November 18, 2022 – 67 days after Mr. Malmsheimer brought it in for repair.

13.     The vehicle malfunction, however, had not been repaired. The FCA service technicians acknowledged that they did not know whether the issue had been fixed; the repair paperwork described the repairs that had been performed but stated "Was unable to confirm these were [the] cause of the symptoms [due] to the intermittent nature of the malfunction."

14.     The FCA service technicians had driven the vehicle for a total of 96 miles in that time, some portion of which was the result of attempting to recreate the malfunction and the rest

test driving the vehicle to determine whether the repairs undertaken had corrected the malfunction.

15. Mr. Malmsheimer was unwilling to take possession of the vehicle given the nature of the malfunction and the service department's uncertainty about whether it had been fixed. It was only a matter of sheer luck that the malfunction had not occurred in a critical driving situation when a sudden loss of power could have resulted in a life-ending crash for him and his family.

16. On November 8, 2022, Plaintiffs initiated an arbitration with FCA through the National Center for Dispute Settlement ("NCDS"). Plaintiffs sought a repurchase of the vehicle by FCA in accordance with ORS 646A.404.

17. On November 23, 2022, the National Highway Transportation Safety Administration ("NHTSA") issued recall number 22V-865 for 2021-2023 Jeep Wrangler 4xes, including the vehicle purchased by Plaintiffs. The reason given for the recall was that the subject vehicles "may experience an engine shut down condition caused by diagnostic reactions to faults caused by loss of communication between the Transmission Control Module and the Hybrid Control Processor."

18. NHTSA noted that this malfunction created a safety risk because "An engine shut down condition may result in an unexpected loss of motive power while driving, which can cause a vehicle crash without prior warning." Documents filed with NHTSA indicate that 100 percent of the subject vehicles have the defect. This was the precise malfunction that Mr.

Malmsheimer experienced with the vehicle. FCA knew that the malfunction had caused at least two accidents and one injury.

19. FCA knew of this manufacturing defect as early as 2021 but continued to sell the Wrangler 4xes in reckless disregard of the rights and safety of those who purchased it and the general public. FCA did not advertise this manufacturing defect generally or disclose it to Plaintiffs prior to their purchase and receipt of the Wrangler 4xe.

20. FCA has not contacted Plaintiffs about the recall or how it intends to fix it.

21. In addition to that manufacturing defect, the Wrangler 4xe has a design defect (known as "Limp Home Mode") where the power loss described above can be triggered by an undefined set of circumstances even if all vehicle systems are working properly. The Owner's Manual for the Wrangler 4xe does not explain how to avoid triggering the "Limp Home Mode."

22. FCA was aware of this design defect but continued to sell the Wrangler 4xes in reckless disregard of the rights and safety of those who purchased it and the general public. FCA did not advertise the design defect generally or disclose it to Plaintiffs prior to their purchase and receipt of the Wrangler 4xe.

23. On December 15, 2022, the NCDS arbitrator found that "confirmation of repair can neither be confirmed nor denied with certainty" and the that the service department had the vehicle for 67 days – 37 days longer than Oregon's Lemon Law requires to trigger a buyback. Surprisingly, despite those findings, the NCDS arbitrator denied Plaintiffs' Lemon Law Buyback claim. Plaintiffs did not accept the NCDS arbitrator's ruling.

24. As a result of the arbitrator's denial of his claim, Mr. Malmsheimer felt he had no option but to retake possession of the vehicle. On December 15, 2022, Mr. Malmsheimer retrieved the 4xe from the FCA dealer's service department.

25. On January 24, 2023, the Plaintiffs' Wrangler 4xe experienced the same malfunction and loss of power described above. On this malfunction, the vehicle's odometer read 1,369 miles, 791 miles after the vehicle had been serviced. Mr. Malmsheimer notified the FCA dealer and service center about the malfunction and requested guidance on what to do. As of the date of filing, neither have responded to his inquiry.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

(Violation of Oregon Unlawful Trade Practices Act – ORS 646.608)

26. Plaintiffs reallege the allegations set forth above, and in addition allege the following.

27. As set forth above, FCA violated the Unlawful Trade Practices Act by:

   a. Failing to disclose the known manufacturing and design defects described above and thus representing that the Wrangler 4xe has characteristics, uses or qualities that it does not have; and

   b. Failing to disclose the known manufacturing and design defects described above concurrent with delivery of the Wrangler 4xe to Plaintiffs.

28. As set forth above, Plaintiffs suffered an ascertainable loss as a direct result of FCA's misrepresentations about the Wrangler 4xe by not receiving the safe and reliable vehicle that they wanted and that they believed they had purchased.

29. Plaintiffs would never have purchased the vehicle at issue if they had known the truth about the condition and qualities of the vehicle that FCA withheld from them.

30. As set forth above, Plaintiffs paid $65,565 for the vehicle. In addition, plaintiffs expended an additional $5,309 on the vehicle—$1,415 in taxes and fees, a $3,472 service contract and $422 in aftermarket enhancements — as a direct result of FCA's Unlawful Trade Practices.

31. Plaintiffs intend to amend the Complaint at the appropriate time to seek punitive damages in accordance with ORS 646.638(1) in an amount of not less than $1.5 million.

32. Plaintiffs are entitled to their attorney fees pursuant to ORS 646.638(3).

## SECOND CLAIM FOR RELIEF

(Oregon Lemon Law Buyback Claim – ORS 646A.400, *et seq.*)

42. Plaintiffs reallege the allegations set forth above and, allege as follows.

43. As set forth above, Plaintiffs reported to FCA, directly and through its dealer agent, each nonconformity as required by ORS 646A.402.

44. As set forth above, FCA had the opportunity but was unable to conform Plaintiffs' Wrangler 4xe to its express warranty in the following particulars:

   a. The vehicle was out of service for repairs for a cumulative total of 76 days but FCA was unable to repair the malfunction; and

  b. FCA has subjected the malfunction, which is likely to cause death or serious bodily injury, to repair on one occasion and had a final opportunity to repair the malfunction but was unable to do so.

45. As set forth above, Plaintiffs paid $65,565 for the vehicle. In addition, plaintiffs expended an additional $5,733 on the vehicle—$1,415 in taxes and fees, a $3,472 service contract, $422 in aftermarket enhancements, and $424 in fuel costs—in collateral charges.

46. Plaintiffs intend to amend the Complaint at the appropriate time to seek punitive damages of $50,000 in accordance with ORS 646A.412(1).

47. Plaintiffs are entitled to their reasonable attorney fees in accordance with ORS 646A.412(2).

///

///

///

///

///

///

///

///

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For Judgment in their favor;

2. On their First Claim for Relief, for rescission of their contract and restitution of all amounts expended in connection with that contract in the amount proven at trial but currently estimated to be $70,875;

3. On their Second Claim for Relief, for an Order directing Defendant to repurchase their vehicle and pay all costs due in the amount proven at trial, but currently estimated to be $71,298;

4. For an injunction directing Defendant to notify all purchasers of the Wrangler 4xe about the manufacturing and design defects that are the subject of this action;

5. For their reasonable attorney fees incurred in pursuing this action;

6. For their costs and disbursements; and

7. For other relief that the Court deems to be just and equitable under the circumstances.

DATED this 26th day of January, 2023.

HAGLUND KELLEY LLP

By: _____
Christopher Lundberg, OSB No. 941084
Matthew E. Malmsheimer, OSB No. 033847
Attorneys for Plaintiffs